IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HOLIDAY HOSPITALITY
FRANCHISING, LLC,

   Plaintiff,

    v.

HOLTSVILLE HOSPITALITY, LLC,
et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:16-CV-828-TWT

**OPINION AND ORDER**

This is a breach of contract action. It is before the Court on the Plaintiff Holiday Hospitality Franchising, LLC's Motion for Summary Judgment [Doc. 29-1]. For the reasons stated below, the Plaintiff Holiday Hospitality's Motion for Summary Judgment [Doc. 29-1] is GRANTED.

**I. Background**

The Plaintiff Holiday Hospitality entered into a license agreement with the Defendant Holtsville Hospitality, LLC on August 20, 2008, that gave Holtsville the rights to renovate an old hotel and operate it under Holiday Hospitality's brand,

Crowne Plaza.[1] On the same day, the Defendants Ashok Pancholi and Chintah Mehta (collectively, the "Guarantors") executed a Guaranty, in which they agreed to be held personally liable under the License Agreement.[2] The License Agreement required Holtsville to conduct a number of renovations to prepare the building for opening and ensure that the hotel conformed to Holiday Hospitality's brand standards.[3] The renovation work was "an essential element of the consideration relied upon," and the parties agreed that any failure by Holtsville to "perform the [w]ork in accordance with [Holiday Hospitality's] requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment "B") shall constitute a material breach..."[4]

The Property Improvement Plan ("PIP"), as Attachment B to the License Agreement, specifically listed the work that needed to be done, and required that the renovations in the guest rooms be completed by January 31, 2009, and the commercial and exterior areas of the hotel by July 31, 2009.[5] The PIP allowed for extensions to

---

[1] Pl.'s Stat. of Mat. Facts ¶ 1. See also License Agreement, Compl., Ex. A.

[2] Pl.'s Stat. of Mat. Facts ¶ 3.

[3] License Agreement § 14.I [Doc. 1-1].

[4] Id.

[5] Id., Attachment B at 46.

these deadlines to be granted by Holiday Hospitality, but also noted that "[a]s a condition to approving a milestone extension, [Holiday Hospitality] may require that the PIP be modified to include upgrading or renovation of additional areas or items (in addition to any charges that might be due)."[6]

As the original deadlines came and went, Holiday Hospitality informed Holtsville of a number of items listed in the PIP that were not yet complete. Rather than immediately terminate the License Agreement, however, Holiday Hospitality granted Holtsville a number of extensions.[7] In addition to these extensions, Holiday Hospitality also added new requirements to the work listed in the PIP, including redoing the hotel's business center, providing a "professionally prepared signage/communications program," and removing the hotel gift shop.[8] Additionally, it took Holiday Hospitality six months to give formal written approval to proceed on planned exterior work, after which it eventually demanded that Holtsville replace its designer with a company suggested by Holiday Hospitality.[9]

---

[6] Id.

[7] Defs.' Stat. of Additional Mat. Facts ¶¶ 2-3.

[8] Id. at ¶¶ 4-6.

[9] Id. at ¶¶ 8-9.

After these initial series of extensions and modifications to the PIP, Holiday Hospitality sent its first Notice of Default and Termination on March 22, 2011.[10] This first letter stated that unless the renovation work was completed prior to May 2, 2011, or the termination date was extended, the Lease Agreement would be terminated on May 9, 2011.[11] Holiday Hospitality agreed to extend these termination deadlines as well, but eventually Holiday Hospitality terminated the License Agreement on September 11, 2012.

Upon termination, Holiday Hospitality sent a series of letters to the Defendants demanding payment of the liquidated damages due under the License Agreement for early termination.[12] The Defendants having denied payment, Holiday Hospitality filed this action in the State Court of DeKalb County, Georgia, alleging breach of the License Agreement and the Guaranty, and seeking damages as well as attorney's fees. The Defendants removed the case to this Court on the basis of diversity jurisdiction, and filed a counterclaim for bad faith. Holiday Hospitality now moves for summary judgment on its claims as well as the Defendants' counterclaim.

---

[10] Pl.'s Stat. of Mat. Facts ¶ 6.

[11] Notice of Default and Termination [Doc. 1-1 at 102].

[12] Pl.'s Stat. of Mat. Facts ¶ 7.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[13] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[14] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[15] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[16] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[17]

---

[13] FED. R. CIV. P. 56(a).

[14] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[15] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[16] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[17] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

This is a straightforward breach of contract case, governed by Georgia law.[18] In Georgia, the elements for a breach of contract claim are the "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."[19] The record is clear in this case that the Defendants breached the License Agreement and Guaranty by failing to meet their deadlines and refusing to pay the damages contemplated by the contract.

The License Agreement required Holtsville to "perform the construction and renovation work...set forth on Attachment B,"[20] known as the Property Improvement Plan. Attachment B also set out a timetable of deadlines for the renovation work, requiring that the work in the guest room areas be completed by January 31, 2009, and the work in the commercial and exterior areas be completed by July 31, 2009. The parties agreed that failure to meet these deadlines would constitute a material breach. While the deadlines could be extended, extensions were solely in the discretion of Holiday Hospitality. Holtsville failed to meet these deadlines not just once, but numerous times after being granted multiple extensions by Holiday Hospitality.

---

[18] See License Agreement § 14.B.

[19] Norton v. Budget Rent A Car Sys., Inc., 307 Ga. App. 501, 502 (2010).

[20] License Agreement, § 14.I.

The Defendants acknowledge this, but they counterclaim that the fault for the breach actually lies with Holiday Hospitality because of its alleged bad faith. The Defendants point to the changing work requirements that, they argue, made it impossible for Holtsville to comply with the License Agreement. The motivation for these increasingly onerous requirements, the Defendants allege, was the opening of another Holiday Hospitality hotel nearby. Under the Defendants' theory, Holiday Hospitality wanted Holtsville to fail so that all of the business could go to the Plaintiff's newly opened competitor.

But this counterclaim is unconvincing given the facts of this case. As a contractual matter, Holiday Hospitality had wide latitude to judge whether the work being done by the Defendants was satisfactory.[21] In addition, the License Agreement gave Holiday Hospitality the authority to make modifications to the work the Defendants were required to do each time a deadline was extended.[22] The Defendants acknowledge that they did not complete the required work by the original deadlines,

---

[21] See License Agreement § 4.D ("Licensor's judgment in such matters [e.g., quality, cleanliness, appearance, and service] shall be controlling in all respects, and it shall have wide latitude in making such judgments...").

[22] See License Agreement, Attachment B, at 46 ("As a condition to approving a milestone extension, HHFI may require that the PIP be modified to include upgrading or renovation of additional areas or items (in addition to any charges that might be due).").

and that the modifications to the PIP all came after this first deadline passed and was extended.[23] Thus, the changes Holiday Hospitality kept making as each deadline was extended are not evidence of bad faith, but merely an exercise of its contractual rights under the License Agreement.

Now, it is true that in cases where, as here, "the manner of performance is left more or less to the discretion of one of the parties to the contract, [that party] is bound to the exercise of good faith" in its requirements of the other party.[24] In other words, when one party is contractually empowered to determine whether the other party's performance is satisfactory or not, it must exercise that judgment reasonably and not arbitrarily or capriciously. Nothing in this case, however, suggests that Holiday Hospitality acted in any way other than reasonably. The Defendants have made no allegation that the Plaintiff interfered with their ability to meet the original deadlines. When the Defendants failed to meet those original deadlines, Holiday Hospitality could have claimed a breach and been within its contractual rights to seek damages. Instead, Holiday Hospitality gave the Defendants an additional three years to bring the hotel up to par, demonstrating a patience it was under no contractual obligation to

---

[23] See Defs.' Resp. to Pl.'s Mot. for Summ. J., at 3 ("...some of the work took longer than expected. At first, Plaintiff addressed this reality reasonably.").

[24] Maree v. ROMAR Joint Venture, 329 Ga. App. 282, 294 (2014).

show. And contrary to the Defendants' argument, the presence of the other hotel does not suggest bad faith. Nothing in the License Agreement prevented Holiday Hospitality from contracting with other hotels, and other than stating that it was "nearby," the Defendants have produced no evidence to show that the other hotel was even a competitor.

In short, there is no question that the Defendants breached the License Agreement by failing to complete the renovation work in the time required. And there is no evidence to suggest that the Plaintiff acted in bad faith. Rather, the evidence reveals just the opposite, as Holiday Hospitality showed significant patience in the face of Holtsville's continued failure to meet deadlines. Because Holtsville breached the License Agreement, and because the Defendants Pancholi and Mehta agreed to guarantee Holtsville's liabilities under the License Agreement,[25] all three Defendants are jointly and severally liable for the damages contemplated under the contract. Consequently, pursuant to the License Agreement,[26] the Defendants are also liable for attorney's fees in an amount to be determined by the Court at a future date in relation

---

[25] The Defendants Pancholi and Mehta do not dispute their liability under the Guaranty, except to the extent that they argue there was no breach of the underlying License Agreement. Because the Court has found that Holtsville did breach the License Agreement, the Court finds the breach of the Guaranty to be admitted.

[26] See License Agreement § 14.J.

to the Defendants' Motion to Determine Reasonableness of Attorneys' Fees [Doc. 34].[27]

## IV. Conclusion

For the reasons stated above, the Plaintiff Holiday Hospitality Franchising, LLC's Motion for Summary Judgment [Doc. 29-1] is GRANTED.

SO ORDERED, this 12 day of July, 2017.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[27] The Defendants did not substantively challenge their liability for attorney's fees. Their sole argument depended on escaping liability regarding the underlying breach of contract. Having found that the Defendants did breach the contract, the Court also finds that the Defendants admitted to liability for attorney's fees.